**U.S. Department of Justice**

Civil Division

CCBird
DJ No. 154-05-448

Telephone: 202.307.0453
Facsimile: 202.514.7965

*Washington, D.C. 20530*

BY ELECTRONIC MAIL
AND FIRST-CLASS MAIL

Karen L. Manos, Esq.
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036

Re: Raytheon Co. v. United States,
Court of Federal Claims No. 05-448C

Dear Ms. Manos:

This is in response to your November 9 letter and other discovery matters.

First, I would hope that you would restore some semblance of civility to your interactions with opposing counsel in this case. I do not appreciate your calling me a "moron" as you did during the course of the November 9 deposition of John McKenna at your office, nor your telling me on that same occasion that you could not understand why the Department of Justice would assign someone like me (who, you stated, "knows nothing about government contracts") to the defense of these cases, nor the numerous other insults that you hurled at me during the deposition, wholly without any provocation. When I complained about the abuse you were heaping upon me, your only response was to acknowledge (twice) that you had in fact abused me, but gave as the reason for your conduct that you had lost your temper. You never apologized. Indeed, you only withdrew the remark that I was a moron when I stated that, unless you withdrew it, I would suspend the deposition and ask the Court for a protective order. And, when you did withdraw your remark, you gave as the reason that you were withdrawing it your lack of personal knowledge (because, as you stated, you "did not know what Mr. Bird's IQ is"), not because that remark (and others like it) were highly unprofessional, abusive remarks that had no place in that or any other deposition.

As I hope you realize, losing your temper is no excuse for your behavior, which was wholly unwarranted, unprofessional, and inconsistent with your obligations as an officer of the Court. Because I take those obligations seriously, I refused during the deposition to respond in kind to your insults, and will not do so now. I will advise you, however, that, if there is the slightest repetition of such

professional misconduct on your part, I will not hesitate to suspend the deposition and ask the Court to impose the appropriate sanctions upon you and your client.

Second, your characterization in plaintiff's Motion to Compel, filed November 10, 2006, of the "meet and confer" discussion that occurred before the McKenna deposition last Thursday is both inaccurate and incomplete. Perhaps you are embarrassed about your intransigence, but you have curiously left out the fact that you adamantly insisted that we have the "meet and confer" discussion before the commencement of the deposition, rather than immediately after, and stated that you would file Raytheon's motion to compel immediately unless the Government agreed with your demand to have the "meet and confer" before the deposition. To avoid burdening the Court with an unnecessary motion, the Government acquiesced in your demand, and we had the "meet and confer" before the deposition commenced. During the "meet and confer," I told you that I wanted to consider the points that you and Ms. Brennan had raised and discuss them with Mr. Rabyne, and that I would get back to you today with our proposal for the search. In response, you again threatened to file Raytheon's motion that same day (November 9), without waiting for the Government's response, unless the Government would commit to giving to you today a schedule for the completion of the search and the production of documents. I replied that I could not make such a commitment to provide such a schedule, because the next day after our "meet and confer" (Friday) was a Federal holiday (the observance of Veterans' Day), and the people we needed to talk to would not necessarily be in the office on a Federal holiday. I told you that if you were still insisting that you would file the motion to compel unless the Government agreed at that moment to provide to you today (Monday) a firm schedule for production, then you should file your motion and we would have to ask the Court to resolve our disagreement.

Even though you insisted on filing your motion the next day (November 10), without awaiting the Government's response, I wanted to let you know the Government's position with respect to Requests Nos. 3, 4, 6, 8, 10, and 11. Without waiver of any of the Government's previous objections, we will search for documents that reflect either (ii) the amount of pension cost that was actually allocated to any of the segments in question during any of the years covered by these requests, or (ii) any such segment's contract mix during any year in which pension cost was allocated to it (*i.e.*, the share of any such segment's business made up of CAS-covered contracts and subcontracts of various types). Since this is the most that could be relevant, we would ask that Raytheon withdraw its motion to compel. We will advise you when we will be able to complete the production of these documents as soon as we are able to give you such an estimate.

Finally, in response to your November 9 letter requesting that a further search be made of Mr. McKenna's files, we have already commenced such a search. It is not clear that our earlier search missed any of the documents that you inquired about, but we will check and see if we can locate these documents. We will advise you of the results of the further search as soon as we have completed it.

Sincerely,

C. Coleman Bird
Senior Trial Counsel
Commercial Litigation Branch

cc: Larry Rabyne, Esq.
(by electronic mail)