IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| RAYTHEON COMPANY,<br>Plaintiff,<br>v.<br>UNITED STATES OF AMERICA,<br>Defendant. | ) | No. 05-448C<br>Judge Nancy B. Firestone |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR AN ENLARGEMENT OF TIME TO COMPLETE FACT DISCOVERY**

Plaintiff Raytheon Company respectfully submits this Opposition to Defendant's Motion for an Enlargement of Time to Complete Fact Discovery ("Defendant's Motion"). The Court's October 20, 2006 Order was clear and unequivocal in establishing that discovery would close on December 15, 2006: "No further extensions shall be granted." Despite the Court's Order, Defendant has moved for an extension for two reasons, neither of which has any merit: (1) Defendant failed to meet the Court's deadline for producing documents responsive to Plaintiff's September 13, 2006 discovery request; and (2) Defendant is contemplating filing a motion to compel a further RCFC 30(b)(6) deposition because Plaintiff's designated witness testified that Plaintiff relied on its independent actuary, Mercer Human Resources, to compute the amount of the pension and postretirement benefit ("PRB") deficits, but the witness could not explain the complex actuarial calculations (a subject about which Plaintiff intends to file an expert witness report in accordance with the Court's December 14, 2006 Order). Neither of Defendant's reasons warrants granting a further extension of the close of discovery.

## I. DEFENDANT'S FAILURE TO MEET THE COURT'S DEADLINE DOES NOT JUSTIFY EXTENDING THE DEADLINE

At the time the Court entered its October 20th Order, Plaintiff's September 13th discovery request had already been pending for more than a month and Defendant had not produced a single document in response to the request, nor even agreed to a date by when any of the documents would be produced. Moreover, many of the documents requested in Plaintiff's September 13th discovery request were documents that should have been but were not produced by Defendant in response to Plaintiff's first discovery request, dated February 16, 2006. When it became clear that Defendant was not cooperating in discovery and did not appear to have any intention of producing the requested documents before the close of discovery, Plaintiff on November 10, 2006 moved to compel.

In its Opposition to Plaintiff's Motion to Compel, Defendant argued that Plaintiff's motion "should be denied as unnecessary, and a pointless imposition upon the Court's time." *See* Document 38, filed Nov. 21, 2006, at 1. Both in its Opposition to Plaintiff's Motion to Compel and during the status conference on November 22, 2006, Defendant assured the Court that it had either already produced or had undertaken to search for and produce the requested documents. Based on those assurances, the Court denied Plaintiff's Motion to Compel as moot. The Court's November 22, 2006 Order stated:

> Based on the representations of the government during the status conference held on November 22, 2006, that the government is endeavoring to comply with the plaintiff's document request by the December 15, 2006 close of fact discovery, the plaintiff's Motion to Compel Defendant to Produce Documents in Response to Plaintiff's Second Set of Requests for Production of Documents, filed on November 10, 2006 is denied as **MOOT**. In the event that the plaintiff determines that the government's production of documents does not meet its needs, the plaintiff may seek an extension of the discovery period.

Defendant's current request turns the Court's Order on head by arguing that because Defendant failed to meet the deadline, Defendant should be entitled to seek an extension of the discovery period.

Furthermore, Defendant's efforts to produce the requested documents appear to be far from the "best efforts" claimed in Defendant's Motion. In the eight months since Plaintiff served its first discovery request, Defendant has produced approximately four boxes of documents, and only recently requested that an additional seventeen boxes of documents be retrieved from archival storage. The vast majority of the documents produced by Defendant in the past month were thousands of individually scanned images of documents that had previously been produced. Defendant admitted as much in its November 30th transmittal letter, but stated that "we are producing them again in order to get them to you as soon as possible, without the delay involved in attempting to weed out the duplicates." *See* Letter from C. Coleman Bird to Karen L. Manos, dated Nov. 30, 2006, attached hereto as Exhibit 1. Contrary to the requirements of RCFC 34(b), the individually scanned images were neither produced as they are kept in the usual course of business nor organized or labeled to correspond with the categories in the request. Thus, far from making a genuine effort to comply with the discovery request, Defendant simply caused Plaintiff to incur needless time and expense in reviewing thousands of individually scanned images to determine whether there were any documents that had not previously been produced.

Had Defendant begun searching for the responsive documents when Plaintiff served its discovery request on September 13th, instead of waiting until Plaintiff filed a motion to compel, Defendant may have been able to meet the deadline established in the Court's Order. In any event, however, a party's failure to meet a Court imposed deadline is not a justification for

extending the deadline. If anything, Defendant's continuing failure to produce the documents is a basis for granting Plaintiff's previous Motion to Compel.

## II. DEFENDANT HAS NO BASIS FOR MOVING TO COMPEL ANOTHER RCFC 30(b)(6) DEPOSITION

Defendant's second reason for requesting an enlargement of the fact discovery deadline is equally as frivolous as its first reason. On November 14, 2006, Plaintiff's counsel received notice, pursuant to RCFC 30(b)(6), that on December 14, 2006, Defendant would take the deposition of Plaintiff's designated witness, at Defendant's counsel's office, regarding the matters enumerated in Schedule A of the notice. A copy of the notice is attached hereto as Exhibit 2. Also attached to the notice was a request for production of documents, propounded pursuant to RCFC 34. Plaintiff produced its designated witness at the appointed day, time and place, and served its written response to the request for production of documents within thirty days of its receipt.[1]

Plaintiff's designated witness for the RCFC 30(b)(6) deposition was Terence J. Murphy. Mr. Murphy testified that he recently retired from Raytheon after almost forty years of service. Murphy Dep. Tr. at 15. Excerpts of the draft deposition transcript are attached hereto as Exhibit

---

[1] Defendant's Motion erroneously implies that its RCFC 30(b)(6) notice was a subpoena duces tecum under RCFC 30(b)(1), when in fact it was a notice of deposition accompanied by a request for production of documents under RCFC 30(b)(5). When a notice of deposition is accompanied by a request for production of documents, RCFC 30(b)(5) provides that: "The procedure of RCFC 34 shall apply to the request." RCFC 34 requires a written response within thirty days, which is exactly what Plaintiff provided. RCFC 30(c) provides that objections to deposition questions shall be made during the deposition. Thus, there was no reason for (and certainly nothing in the Rules required) Plaintiff to seek a protective order regarding either the deposition notice or the accompanying document request. Although Defendant's notice was received on November 14, 2006, during the deposition, Defendant's counsel stated that he personally delivered the notice to Plaintiff's counsel's law firm mailroom at "approximately 6:30 p.m." (after the close of business) on November 13, 2006.

3. Prior to his retirement, Mr. Murphy served as Raytheon's Assistant Controller for Government Accounting, and had corporate responsibility for all Cost Accounting Standards ("CAS") and Federal Acquisition Regulation ("FAR") matters. *Id.* at 13. Mr. Murphy was personally involved in putting together the CAS 413 segment closing adjustment claims for all four of the segments at issue in this case, including Raytheon's efforts to obtain the historical records necessary to compute the government's share of the segment closing adjustment amounts. *Id.* at 57, 79-81, 95-96. Mr. Murphy testified that in preparation for the RCFC 30(b)(6) deposition, he spent approximately 10 to 11 hours reviewing documents, and made two trips to Raytheon's corporate headquarters to meet with his successor and others. *Id.* at 27. The deposition lasted from 9:01 a.m. until 3:45 p.m., with a short break for lunch.

Defendant's Motion makes the broad (and erroneous) assertion that "plaintiff's designated representative (Mr. Terence Murphy) was unable to provide any information at all in response to major subject matters that had been designated in Schedule 'A' of the Notice of Deposition." Contrary to Defendant's assertion, Mr. Murphy provided Raytheon's response to all of the areas listed in the notice of deposition; the problem is not that Mr. Murphy was "unable to provide any information" but that Defendant's counsel did not like the information Mr. Murphy provided.

Defendant contends that Plaintiff's 30(b)(6) designee "had no information in response to ¶ 6 of Schedule 'A' regarding what search, if any, plaintiff had performed for documents requested in Schedule 'B' of the Notice." In response to questions concerning this paragraph, Mr. Murphy responded that he "was not asked to provide any information for this schedule B" and "[t]o the best of [his] knowledge, all the information was available, and had been previously provided." *Id.* at 36-37. As noted above, Defendant's 30(b)(6) Notice of Deposition was not a

subpoena duces tecum; it was a notice of deposition accompanied by a request for production of documents. Plaintiff served its written responses to the request for production of documents in accordance with RCFC 34. Accordingly, Mr. Murphy's testimony accurately stated Raytheon's response to paragraph 6 of the notice of deposition, namely, that no one undertook a search for responsive documents because no documents had to be produced at the deposition (and most, if not all, of the requested documents have already been produced).

Defendant also argues that Mr. Murphy "had no information at all on how the amount of PRB liability that plaintiff contends it is entitled to recover in the CAS 413.50(c)(12) segment-closing adjustments was calculated, or about the actuarial or other assumptions that were used, and the bases for such calculations" as set forth in paragraph 4 of the 30(b)(6) Notice of Deposition; and "was similarly unable to answer any questions about the amounts, values, or calculations of pension and PRB liability in plaintiff's own claims, or the basis for such amounts, values, or calculations (*id.*, ¶ 5)." Mr. Murphy testified that for both the pension and the PRB claims, the amount of the deficit was determined by Raytheon's outside actuary, Mercer Human Resources. Murphy Dep. Tr. at 121, 136-38, 177-78. The actuarial calculations and assumptions are set forth in the segment closing adjustment proposals that Raytheon submitted to the government after the sale of each of the four segments (which have previously been produced to Defendant). *E.g.*, Murphy Dep. Tr. 138 (discussing submission for Aerospace segment closing). Mr. Murphy testified that these segment closing submittals were reviewed by both the Defense Contract Audit Agency ("DCAA") and Defense Contract Management Agency Contractor Insurance/Pension Review ("CIPR") team. *Id.* at 137, 177-78. He also testified that the CIPR team's actuary, George Matray, communicated directly with Mercer, and no exceptions were taken to the amount of the deficits computed by Mercer. *Id.* Mr. Murphy testified that in

preparing Raytheon's claims, he used the pension and PRB deficits computed by Mercer. *Id.* at 177-78. Defendant's contention that Mr. Murphy was "unable to provide any information at all" is therefore simply inaccurate.

However, Mr. Murphy is not an actuary and was unable to explain how *Mercer* (as opposed to how *Raytheon*) computed the pension and PRB deficits, or the actuarial or other assumptions that *Mercer* used in computing the deficit amounts. *E.g.*, Murphy Dep. Tr. at 160 ("I cannot explain Mercer's calculations.") Mr. Murphy also testified that he did not know whether anyone at Raytheon could explain how Mercer computed the deficit amounts. *Id.* at 134.

During the deposition, Defendant's counsel asked Mr. Murphy whether, in preparation for the deposition, he or anyone else at Raytheon had contacted Mercer to find out the basis for Mercer's calculations. *Id.* at 179-80. Mr. Murphy testified that he had not, and was unaware of anyone else having done so. *Id.* at 180. Defendant's counsel then stated that "the government's position is that the deposition has not been completed," and "the government reserves the right to ask the court to compel Raytheon to provide a witness for additional depositions regarding the numerous subject matters as to which this designated representative had no knowledge or information to supply in response to the notice." *Id.* at 181-82. Plaintiff's counsel responded that: "Our position is that those questions go to expert testimony, and the court has directed us to provide expert reports; and we will provide them with the actuarial assumptions and calculation of the pension deficit, and you can depose the expert witness." *Id.* at 182.

Determining the amount of a pension or PRB deficit (*i.e.*, the difference between the actuarial accrued liabilities and the market value of the assets allocated to a segment) is an extremely complex undertaking that requires the services of an actuary. Like most government

contractors, Raytheon has engaged the services of an independent actuary to make those calculations. This Court has established a schedule for submission of expert reports. Raytheon intends to submit an expert actuarial report, which will cover, among other things, the amount of the pension and PRB deficits for each of the segment closings at issue in this case. No purpose would be served in having a lay witness call an actuary in order to provide the lay witness's understanding about the actuary's area of expertise. Accordingly, Mr. Murphy's inability to explain Mercer's actuarial calculations is not a legitimate basis for seeking another RCFC 30(b)(6) deposition.

## III. CONCLUSION

Defendant's continued attempts to delay the progress of this case is unfairly prejudicing Plaintiff's ability to prepare its case. Defendant should not be permitted to ignore Court-imposed deadlines. Raytheon therefore respectfully requests the Court to deny Defendant's Motion for an Enlargement of Time to Complete Fact Discovery and direct Defendant to produce the requested documents.

Respectfully submitted,

s/Karen L. Manos

Date: December 21, 2006

Karen L. Manos
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, NW
Washington, DC 20036
Telephone: (202) 955-8536
Facsimile: (202) 530-9533
kmanos@gibsondunn.com

Attorney of Record for Plaintiff
RAYTHEON COMPANY

Of Counsel:
Christyne K. Brennan
GIBSON, DUNN & CRUTCHER LLP

CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of December, 2006, a copy of the foregoing Plaintiff's Opposition to Defendant's Motion for Enlargement of Tim to Complete Fact Discovery was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Christyne K. Brennan
Christyne K. Brennan