IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| RAYTHEON CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | No. 05-448C<br>(Judge Firestone) |

**DEFENDANT'S NOTICE OF DEPOSITION UNDER RCFC 30(B)(6)**
**AND REQUESTS FOR PRODUCTION OF DOCUMENTS**

Notice is hereby given, pursuant to RCFC 30(b)(6), that on December 14, 2006, beginning at 9:00 a.m., defendant, the United States, will take the deposition upon oral examination of plaintiff Raytheon Corporation Company before an officer authorized to administer oaths. The deposition will be taken at the following location:

1100 L Street, N.W., 11th Floor
Washington, D.C. 20005

The matters upon which examination is requested are set forth in Schedule "A" attached hereto. Pursuant to RCFC 30(b)(6), plaintiff is required to designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, who shall testify to all matters known or reasonably available to plaintiff regarding the matters described on Schedule "A." The deposition will continue from day to day until completed. You are invited to attend and cross-examine.

Pursuant to RCFC 34, plaintiff is requested to produce the documents requested in the continuing requests for production set forth in Schedule "B" attached hereto, on or before

EXHIBIT
tabbles
2

December 13, 2006.

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

OF COUNSEL:

LAWRENCE S. RABYNE
Defense Contract Management Agency
1523 W. Central Road
Arlington Heights, IL 60005-2451

Dated: November 13, 2006

C. COLEMAN BIRD
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20005
Telephone: 202.307.0453
Facsimile: 202.514.7965

Attorneys for Defendant, United States of America

# Schedule "A"

**SCHEDULE "A" OF**
**NOTICE OF DEPOSITION UNDER RCFC 30(B)(6) AND**
**REQUESTS FOR PRODUCTION OF DOCUMENTS**
**<u>TO PLAINTIFF</u>**

## I. DEFINITIONS

The following definitions shall apply in responding to this Notice of Deposition and Requests for the Production of Documents:

1. The term "Segment" refers to Raytheon's Aircraft Integrated Systems segment, Raytheon's Aerospace Division Segment, Raytheon's Optical Systems segment, and Raytheon's Printed Wire Fabrication business unit, which Raytheon alleges is a segment.

2. The term "the Basis" when used in reference to a position, assertion, or contention of law or fact shall mean the factual, regulatory, accounting, actuarial, technical, legal, and any and all other bases for such position, assertion, or contention, as applicable, including, without limitation, all documents and calculations relied upon for such position, assertion, or contention.

## II. MATTERS UPON WHICH EXAMINATION IS REQUESTED

The following are the matters upon which examination is requested as provided in RCFC 30(b)(6):

1. Separately for each Segment, and for each year since the commencement of such Segment's business operations:

a. the total assigned pension cost for CAS 412 and 413 purposes that was allocated to such Segment for each year;

b. the amount of such total assigned pension cost allocated to such Segment for each year that was allocated to:

i. CAS-covered flexibly-priced contracts entered into:

(1) before January 1, 1979;

(2) after January 1, 1979 but before the 1995 Amendments to CAS 412 and 413 became effective and binding upon plaintiff (the "CAS 413 Effective Date");

(3) after the CAS 413 Effective Date;

ii. CAS-covered firm-fixed-price contracts entered into:

(1) before January 1, 1979;

(2) after January 1, 1979 but before the CAS 413 Effective Date;

(3) after the CAS 413 Effective Date;

iii. CAS-covered flexibly-priced subcontracts entered into;

(1) before January 1, 1979;

(2) after January 1, 1979 but before the CAS 413 Effective Date;

(3) after the CAS 413 Effective Date;

iv. CAS-covered firm-fixed-price subcontracts entered into:

(1) before January 1, 1979;

(2) after January 1, 1979 but before the CAS 413 Effective Date;

(3) after the CAS 413 Effective Date;

v. commercial contracts and subcontracts; and

vi. other final cost objectives.

c. the Basis for the amounts set forth in response to each of the above

subparagraphs.

2. Separately for each Segment, and for each year since the commencement of such Segment's business operations:

a. the total amount of postretirement benefit ("PRB") cost for CAS purposes that was allocated to such Segment for each year; and

b. the amount of such total PRB cost allocated to such Segment for each year that was allocated to each of the types of contracts and subcontracts described in subparagraph 1.b above; and

c. the Basis for the amounts set forth in response to each of the above subparagraphs.

3. The history, corporate form, business, contracts or subcontracts performed, legal status, operations, reporting relationships and requirements, and internal responsibilities (including any responsibility for profit or producing a product or service) of the Printed Wire Fabrication business unit at any time from the inception of the unit to the date of its sale by plaintiff.

4. a. the amount of liability for PRBs that plaintiff contends should be included in the CAS 413.50(c)(12) segment-closing calculation for each Segment; and

b. the calculation of any such amount and the Basis for such calculation, including, without limitation, all actuarial and other assumptions used and the Basis for such assumptions.

5. The amounts, values, and calculations contained in the claims for the recovery of the CAS 413 segment-closing adjustment, including the claims for PRB liability, that plaintiff

submitted to the Government with respect to each Segment, and the Basis therefor, including, without limitation, all actuarial and other assumptions used and the Basis for such assumptions.

6. All efforts made by, or behalf of, plaintiff to search for, locate, and produce documents that are responsive to Schedule "B" of this Notice.

# Schedule "B"

**SCHEDULE "B" OF**
**NOTICE OF DEPOSITION UNDER RCFC 30(B)(6) AND**
**REQUEST FOR PRODUCTION OF DOCUMENTS**
**TO PLAINTIFF**

## I. DEFINITIONS AND INSTRUCTIONS

The following definitions and instructions shall apply in responding to this subpoena:

1. The term "Document" shall be construed in the broadest sense possible under RCFC 34 and 45. The term "Document" shall include, without limitation, any written, recorded or graphic matter, however produced or reproduced, and includes, without limitation, any "document," "tangible thing," or "object" as those terms are used in RCFC 34, any "book," "document" or "tangible thing" as those terms are used in RCFC 45, and any "writing," "recording," "photograph," "original," or "duplicate," as those terms are defined in Rule 1001 of the Federal Rules of Evidence. The term "Document" includes, without limitation, the original and any copy of any written, typed, printed, recorded, graphic, computer-generated, or other matter of any kind from which information can be derived, whether produced, reproduced, or stored on paper, cards, tape, film, electronic facsimile, computer storage devices, magnetic medium, optical storage device, or any other medium or storage device, in your possession, custody, or control, or whose existence is or was ever known to you, including but not limited to: correspondence, letters, notes (whether of visits, meetings, telephone calls, or otherwise), memoranda (whether of visits, meetings, telephone calls, or otherwise), appointment calendars, schedules, telegrams, telexes, facsimiles, electronic mail, press releases, notices, brochures, pamphlets, guidelines, manuals, instructions, summaries or abstracts, diaries, notebooks, minutes, computer printouts or information stored in a computer-readable form, tests, reports,

files, file jackets, analyses, studies, testimony, speeches, worksheets, invoices, bills, written estimates, contracts, subcontracts, agreements of any kind, proposed agreements, proposals, purchase orders, change orders, proposed changes, schedules, schedule updates, plans, charts, diagrams, drawings, graphs, charts, designs, blueprints, tables, photographs, books, articles, or extracts from any of the foregoing, and any other writings or documentary materials of any nature whatsoever, whether or not divulged to other parties, together with any attachments thereto and enclosures therewith. The term "Document" shall include, without limitation, all forms and manifestations of electronically or optically coded, stored, and/or retrievable information, including, but no limited to, "E-Mail" as defined below, voice mail, digital images and graphics, digital or analog audio tapes and files, and digital or analog video tapes and files. The term "Document" or "Documents" also shall include "Electronic Data" as defined below. The term "Document" or "Documents" shall further collectively include the original document, a duplicate original, and any or all copies or reproductions of the original document, to the extent that any or all copies are different in any way from the original document, whether by interlineation, receipt stamps, notation, indication of copies sent or received or otherwise. The term "Document" or "Documents" shall further include any preliminary drafts of any Documents or any working papers related thereto, and specifically includes internal memoranda.

2. The term "Computer" shall include, without limitation, microcomputers (also known as personal computers), laptop computers, portable computers, notebook computers, palmtop computers, personal digital assistants ("PDAs"), minicomputers, and mainframe computers.

3. The term "Computer Network" shall include, without limitation, any hardware

and/or software combination that connects two or more Computers together and allows the Computers to share or transfer digital signals between them. The connection between the Computers need not be either physical or direct (*e.g.*, connection may be by means of modem), nor need there be a central file data server or central operating system. The key factor for purposes of the definition of "Computer Network" is the ability to share data.

4. The term "E-Mail" shall include, without limitation, any Computer-based system for sending, receiving, or storing electronic mail or electronic messages.

5. The term "Electronic Data" shall include, without limitation, any data of any kind or description, entered or inscribed by Computer, mechanical, facsimile, electronic, magnetic, digital, optical, or other means. Electronic Data includes, without limitation, any and all items stored on E-Mail, computer memories, hard disks, floppy disks, compact disks ("CDs"), CD-ROM drives, pagers, PDAs, cellular or mobile telephones, digital video disks ("DVDs"), DVD-ROM drives, ZIP disks or ZIP drives, Bernoulli Box drives or their equivalent, magnetic tape of all kinds, microfiche, punched cards, punched tape, or data on or in any other vehicle for, or means of, digital storage or transmittal, Computer programs (whether private or commercial), programming notes or instructions, output resulting from the use of any software or Computer program, including, without limitation, word processing documents, spreadsheets, database files, charts, graphs, outlines, E-Mail, any and all ASCII or EBCDIC files, and any miscellaneous files or file fragments, regardless of the media on which they reside and regardless of whether these Electronic Data exist in an active file, a deleted file, or a file fragment. Electronic Data also includes the file, folder tabs, containers, and labels appended to or associated with any physical storage device or medium for such data.

6. The term "Database" shall include, without limitation, any aggregation or collection of Electronic Data, including, without limitation, a Computer file consisting of a number of records or tables, each of which is constructed of files of a particular type, together with a collection of operations that facilitate searching, sorting, recombination, reporting, and similar operations.

7. The term "the Basis" when used in reference to a position, assertion, or contention of law or fact shall mean the factual, regulatory, accounting, actuarial, technical, legal, and any and all other bases for such position, assertion, or contention, as applicable, including, without limitation, all documents and calculations relied upon for such position, assertion, or contention.

## II. DOCUMENTS TO BE PRODUCED

1. All Documents considered, referred to, or relied upon, in any way in preparing for examination upon any of the subject matters described in Schedule "A" of this Notice.

2. All Documents evidencing, or referring or relating to, any efforts made by, or on behalf of, plaintiff to search for, locate, and produce documents responsive to this Schedule "B" of this Notice.

3. All CAS Disclosure Statements and amendments thereto that mention, refer, or relate to the Printed Wire Fabrication business unit or the accounting for the costs of such unit.

4. Documents sufficient to show, separately for each Segment, and for each year since the commencement of such Segment's business operations:

a. the total assigned pension cost for CAS 412 and 413 purposes that was allocated to such Segment for each year;

b. the amount of such total assigned pension cost allocated to such Segment

for each year that was allocated to:

i. CAS-covered flexibly-priced contracts entered into:

(1) before January 1, 1979;

(2) after January 1, 1979 but before the 1995 Amendments to CAS 412 and 413 became effective and binding upon plaintiff (the "CAS 413 Effective Date");

(3) after the CAS 413 Effective Date;

ii. CAS-covered firm-fixed-price contracts entered into:

(1) before January 1, 1979;

(2) after January 1, 1979 but before the CAS 413 Effective Date;

(3) after the CAS 413 Effective Date;

iii. CAS-covered flexibly-priced subcontracts entered into;

(1) before January 1, 1979;

(2) after January 1, 1979 but before the CAS 413 Effective Date;

(3) after the CAS 413 Effective Date;

iv. CAS-covered firm-fixed-price subcontracts entered into:

(1) before January 1, 1979;

(2) after January 1, 1979 but before the CAS 413 Effective Date;

(3) after the CAS 413 Effective Date;

v. commercial contracts and subcontracts; and

vi. other final cost objectives.

c. the Basis for the amounts set forth in response to each of the above subparagraphs.

5. Documents sufficient to show, separately for each Segment, and for each year since the commencement of such Segment's business operations:

a. the total amount of postretirement benefit ("PRB") cost for CAS purposes that was allocated to such Segment for each year; and

b. the amount of such total PRB cost allocated to such Segment for each year that was allocated to each of the types of contracts and subcontracts described in subparagraph 1.b above; and

c. the Basis for the amounts set forth in response to each of the above subparagraphs.

6. All Documents evidencing, or referring or relating to, the history, corporate form, business, contracts or subcontracts performed, legal status, operations, reporting relationships and requirements, and internal responsibilities (including any responsibility for profit or producing a product or service) of the Printed Wire Fabrication business unit at any time from the inception of the unit to the date of its sale by plaintiff.

7. If not previously provided, Documents sufficient to show:

a. the amount of liability for PRBs that plaintiff contends should be included in the CAS 413.50(c)(12) segment-closing calculation for each Segment; and

b. the calculation of any such amount and the Basis for such calculation, including, without limitation, all actuarial and other assumptions used and the Basis for such

assumptions.

8. Documents sufficient to show the amounts, values, and calculations contained in the claims for the recovery of the CAS 413 segment-closing adjustment, including the claims for PRB liability, that plaintiff submitted to the Government with respect to each Segment, and the Basis therefor, including, without limitation, all actuarial and other assumptions used and the Basis for such assumptions.

9. All Documents referring or relating to the calculation of the total amount of Raytheon's liability for PRBs for the year in which each Segment was closed for Raytheon's financial reporting purposes, under Statement of Financial Accounting Standard No. 106 ("SFAS No. 106"), or otherwise, and the allocation of a portion of that total amount of PRB liability for each such year to the Segment for inclusion in the CAS 413.50(c)(12) segment-closing calculation for either segment, including, without limitation, all actuarial and other assumptions used and the Basis for such assumptions.

10. All complaints, answers, briefs, and other court or regulatory filings made by or on behalf of Raytheon asserting or contending in words or substance that Raytheon had the right to change, modify, amend, reduce, or eliminate in whole or in part any future benefits payable under any PRB plan that Raytheon contends should be included in the CAS 413.50(c)(12) segment-closing calculation for any Segment.

**CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on the 13th day of November, 2006, I caused a copy of the foregoing "Defendant's Notice of Deposition under RCFC 30(b)(6) and Requests for Production of Documents," to be (i) sent by electronic mail to the address indicated below, and (ii) delivered by hand to the office of:

Karen L. Manos, Esq.
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
E-Mail: KManos@gibsondunn.com