IN THE UNITED STATES COURT OF FEDERAL CLAIMS

--------------------------------X

RAYTHEON CORPORATION, :

Plaintiff, :

v. : No. 05-448C

UNITED STATES OF AMERICA, :

Defendant. :

--------------------------------X

Washington, D.C.

Thursday, December 14, 2006

Deposition of TERENCE MURPHY, a witness herein, called for examination by counsel for Defendant in the above-entitled matter, pursuant to notice, the witness being duly sworn by DENNIS A. DINKEL, a Notary Public in and for the District of Columbia, taken at the offices of the U.S. Department of Justice, 1100 L Street, N.W., Washington, D.C. at 9:01 a.m., Thursday, December 14, 2006, and the proceedings being taken down by Stenotype by DENNIS A. DINKEL, FAPR, CRR, and transcribed under his direction.



EXHIBIT 1

0966f177-fd11-4cef-a6d2-c5b6fde52c43

APPEARANCES:

On behalf of the Plaintiff:
KAREN L. MANOS, ESQ.
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036
Phone: 202-955-8500

On behalf of the Defendant:
C. COLEMAN BIRD, ESQ.
U.S. Department of Justice
1100 L Street, N.W.
Washington, DC 20530
Phone: 202-307-0453

LAWRENCE S. RABYNE, ESQ.
Defense Contract Management Agency
1523 West Central Road
Arlington Heights, IL 60005-2451
Phone: 224-625-8212

of the date of the segment-closing for purposes of the CAS 413 segment-closing calculation?

A. All of the liabilities were put together by Mercer also.

Q. And you're not in a position to describe anything about how they arrived at those numbers; is that true?

A. That is correct. I will say this, though. DCAA did audit all of those calculations, and I don't believe there's any issues that were raised in the determination of those deficit amounts. As I recall.

Q. My question, sir, related to the notice of deposition and the basis for the calculations. I don't know whether DCAA had subpoena power.

MR. BIRD: Let me mark another exhibit. I'd like to have the reporter mark as Defendant's Exhibit No. 6 for identification, a letter dated June 19, 2002, from Mr. Garvey to Mr. John McGrath, which contains -- it is a one-page letter which contains as its sole attachment a letter dated June 13, 2002 from Mr. Jonathan R. Barry, F.S.A.E.A. on the letterhead of Mercer Human Resource Consulting, and an address



0966f177-fd11-4cef-a6d2-c5b6fde52c43

the analysis done by Mercer.

Can you explain what you did with the analysis prepared by Mercer and how it formed or how it went into the claims?

A. Mercer is our outside actuary. In essence, we took the information from Mercer. When Mercer provided the information to Raytheon, it was also provided to DCAA, and I believe the CIPA team looked at some of those documents that were put together by Mercer.

They reviewed those because if you look at all of the documentation that was provided, the initial submissions for these four claims did not contain any government participation. They only contained the Mercer package subsequent to that, as when we worked with government participation. So those were looked at first.

I don't believe there's anything in the documentation that took any issue with the calculations associated with the -- you know, the determination of the asset and liability position at the time of the segment-closing. So we took those

amounts, those deficit amounts and utilized them in the claims, and then extended them further as we researched further information to determine government participation. That's what we did with them.

Q. Mr. Murphy, do you know who -- if there was any direct communication between the CIPA team and Mercer?

MR. BIRD: Objection to the form. You may answer.

THE WITNESS: I believe there was. Mercer would confer on occasion with George Matray down in New York.

BY MS. MANOS:

Q. Do you know who George Matray is?

A. George Matray works in the insurance group for DCMA, I believe.

Q. Is that the same process that was followed for the segment-closings where there was a surplus?

A. Yes, it was.

MR. BIRD: Objection. Beyond the scope of the direct examination.