IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| RAYTHEON COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | No. 05-448C<br>Judge Firestone |

**FIRST AMENDED COMPLAINT**

For its First Amended Complaint in this action, Plaintiff alleges as follows:

**PARTIES**

1. Plaintiff, Raytheon Company ("Raytheon"), is a corporation organized and existing under the laws of the State of Delaware, with its principal corporate offices in Waltham, Massachusetts.

2. Defendant is the United States of America, acting through the Defense Contract Management Agency ("DCMA").

**JURISDICTION**

3. Raytheon and the United States are parties to Contract No. N00024-00-C-5137 (the "Contract"). Administration of the Contract and, in particular, responsibility for Cost Accounting Standards ("CAS") administration resides with DCMA. The Contract is subject to the Contract Disputes Act of 1978, 41 U.S.C. §§ 601-613, and full-CAS coverage.

4. By letter dated November 8, 2004, Raytheon submitted a certified claim for payment of $13,816,382 for the "segment closing" adjustment required by CAS 413-50(c)(12), 48 C.F.R. § 9904.413-50(c)(12), as a result of the sale of Raytheon's Optical Systems segment (the

"Optical Claim"). The cognizant Defense Corporate Executive ("DCE") denied Raytheon's Optical Claim in its entirety in a contracting officer's final decision dated February 1, 2005.

5. By separate letter dated November 8, 2004, Raytheon submitted a certified claim for payment of $1,124,366 for the "segment closing" adjustment required by CAS 413-50(c)(12) as a result of the sale of Raytheon's Printed Wire Fabrication segment (the "PWF Claim"). The DCE denied Raytheon's PWF Claim in its entirety in a contracting officer's final decision dated February 1, 2005.

6. By letter dated January 24, 2005, Raytheon submitted a certified claim for payment of $2,901,507 for the "segment closing" adjustment required by CAS 413-50(c)(12) as a result of the sale of Raytheon's Aerospace Division segment (the "Aerospace Claim"). The DCE denied Raytheon's Aerospace Claim in its entirety in a contracting officer's final decision dated March 7, 2005.

7. By separate letter dated January 24, 2005, Raytheon submitted a certified claim for payment of $68,570,448 for the "segment closing" adjustment required by CAS 413-50(c)(12) as a result of the sale of Raytheon's Aircraft Integrated Systems segment (the "AIS Claim"). The DCE denied Raytheon's AIS Claim in its entirety in a contracting officer's final decision dated March 7, 2005.

8. The Court has jurisdiction over this action pursuant to section 10 of the Contract Disputes Act, 41 U.S.C. § 609, and the Tucker Act, 28 U.S.C. § 1491(a).

## SUMMARY OF FACTS

### I. INTRODUCTION

9. Raytheon is an international high-technology company employing approximately 80,000 people worldwide. Raytheon is an industry leader in defense and government electronics, space, information technology, technical services, and business aviation and special mission aircraft.

10. Raytheon maintains and funds a variety of defined benefit pension plans for its employees. Under these pension plans, the employee benefits to be paid or the basis for determining the benefits to be paid are established in advance, and Raytheon makes contributions to the pension plans in amounts intended to provide the stated employee benefits. The assets for Raytheon's pension plans are held in trust for the benefit of the beneficiaries.

11. Raytheon also offers post-retirement benefits ("PRBs") to its employees. For employee benefits purposes, Raytheon treats PRBs in the same manner as it treats pension benefits. The eligibility requirements for Raytheon's PRBs are based upon the same conditions that determine employee eligibility for pension benefits. Accordingly, precisely the same service by Raytheon's employees gives rise to both pension costs and PRB costs. The PRBs are considered by Raytheon and its employees as an integral part of the Raytheon pension benefits.

## II. COST ACCOUNTING STANDARDS 412 AND 413

12. CAS 412 provides guidance for determining and measuring the components of pension cost, and establishes the bases on which pension costs are assigned to cost accounting periods and allocated to cost objectives. 48 C.F.R. § 9904.412-20. CAS 412-50(a)(7) provides that "[i]f a pension plan is supplemented by a separately-funded plan which provides retirement benefits to all of the participants in the basic plan, the two plans shall be considered as a single plan for purposes of this Standard." *Id.*, § 9904.412-50(a)(7). CAS 412-30(a)(2) similarly recognizes that additional benefits that do not otherwise meet the definition of pension benefits may be provided as an integral part of a pension plan. *Id.*, § 9904.412-30(a)(2).

13. CAS 413 provides "guidance for adjusting pension cost by measuring actuarial gains and losses and assigning such gains and losses to cost accounting periods," and "provides the bases on which pension cost shall be allocated to segments of an organization." 48 C.F.R. § 9904.413-20. In addition, CAS 413 provides guidance for making an adjustment of previously determined pension costs in the event of a segment closing. *Id.*, § 9904.413-50(c)(12). A

"segment" is a division, product department, plant or other subdivision of an organization reporting directly to home office. *Id.*, § 9904.413-30(a)(19). The term "segment closing" includes, among other things, the sale of a segment. *Id.*, § 9904.413-30(a)(20).

14. CAS 413-50(c)(12) requires that in the event of a segment closing, the contractor shall determine the difference between the actuarial accrued liability for the segment and the market value of the assets allocated to the segment. 48 C.F.R. § 9904. 413-50(c)(12). The difference between the actuarial accrued liability and the market value of the assets is referred to as the "adjustment amount."

15. CAS 413-50(c)(12)(vi) provides that the Government's share of the adjustment amount is the product of the adjustment amount and a fraction, the numerator of which is the sum of the pension costs allocated to all CAS-covered contracts and subcontracts, including Foreign Military Sales, during a period of years representative of the Government's participation in the pension plan; and the denominator of which is the total pension costs assigned to cost accounting periods during those same years. 48 C.F.R. § 9904.413-50(c)(12)(vi). Subsection (vi) goes on to provide that: "This amount shall represent an adjustment of contract prices or cost allowances as appropriate. The adjustment may be recognized by modifying a single contract, several but not all contracts, or all contracts, or by the use of any other suitable technique." *Id.*

16. CAS 413-50(c)(12) concludes by stating that:

> The full amount of the Government's share of the adjustment is allocable, without limit, as a credit or charge during the cost accounting period in which the event occurred and contract prices/costs will be adjusted accordingly. However, if the contractor continues to perform Government contracts, the contracting parties may negotiate an amortization schedule, including interest adjustments. Any amortization agreement shall consider the magnitude of the adjustment credit or charge, and the size and nature of the continuing contracts.

48 C.F.R. § 9904.413-50(c)(12)(vii).

## III. THE CONTRACT

17. The Contract was awarded to Raytheon on December 30, 1999 by the Naval Sea Systems Command. The Contract is a firm fixed price contract.

18. The Contract incorporates, among other clauses, Federal Acquisition Regulation ("FAR") 52.230-2, Cost Accounting Standards (Apr 1998).

19. Paragraph (a)(3) of the Cost Accounting Standards clause requires the contractor to:

> Comply with all CAS, including any modifications and interpretations indicated thereto contained in 48 CFR Part 9904, in effect on the date of award of this contract or, if the Contractor has submitted cost or pricing data, on the date of final agreement on price as shown on the Contractor's signed certificate of current cost or pricing data. The Contractor shall also comply with any CAS (or modifications to CAS) which hereafter become applicable to a contract or subcontract of the Contractor. Such compliance shall be required prospectively from the date of applicability to such contract or subcontract.

FAR 52.230-2.

## IV. THE OPTICAL CLAIM

20. On March 1, 2001, Raytheon sold its Optical Systems segment to the B.F. Goodrich Company. Under the terms of the asset purchase agreement, Raytheon retained all of the pension plan assets and actuarial accrued liabilities for the closed Optical Systems segment. Raytheon also retained all of the retiree medical plan liabilities.

21. As required by CAS 413-50(c)(12), Raytheon and its independent pension actuary determined the difference between the actuarial accrued liability for the segment and the market value of the assets allocated to the segment. Then, using the formula specified in CAS 413-50(c)(12), Raytheon computed the Government's share of the adjustment amount.

22. Notwithstanding the unequivocal requirement of CAS 413-50(c)(12), the DCE in a letter dated September 30, 2004 informed Raytheon that the Government did not intend to participate in the Optical segment closing.

23. Accordingly, Raytheon on November 8, 2004, submitted a certified claim, demanding payment of $13,816,382. Raytheon computed, in accordance with CAS 413-50(c)(12)(vi), that the Government's share of the pension adjustment amount for the Optical Systems segment was $9,261,669 and the Government's share of the PRB adjustment amount for the Optical Systems segment was $4,554,713.

24. The DCE denied Raytheon's Optical Claim in its entirety in a final decision dated February 1, 2005.

25. On November 30, 2007, Raytheon submitted its Rebuttal Expert Report of Steven G. Vernon in response to the Defendant's Expert Report of Mr. Colin England in this action. In Raytheon's Rebuttal Expert Report, Mr. Vernon independently performed segment closing calculations for the Optical Systems segment for the related pension and PRB plans as required by CAS 413-50(c)(12). Then, using the formula specified in CAS 413-50(c)(12), Raytheon recomputed the Government's share of the adjustment amount.

26. In accordance with Raytheon's revised calculations, the Government's share of the pension adjustment amount for the Optical Systems segment, determined in accordance with CAS 413-50(c)(12)(vi), is $10,405,470. However, because the Optical Systems segment's pension plan is supplemented by the PRB plan, CAS 412-50(a)(7) requires that the two plans be considered as a single plan. The Government's share of the PRB adjustment amount, determined in accordance with CAS 413-50(c)(12)(vi), is $4,557,762. Accordingly, the Government's share of the combined pension and PRB adjustment amount is $14,963,231.

## V. THE PWF CLAIM

27. On April 21, 2001, Raytheon sold its Printed Wire Fabrication segment to Tyco Printed Circuit Group LP. Under the terms of the asset purchase agreement, Raytheon retained all of the pension plan assets and actuarial accrued liabilities for the closed PWF segment. Raytheon also retained all of the retiree medical plan liabilities.

28. As required by CAS 413-50(c)(12), Raytheon and its independent pension actuary determined the difference between the actuarial accrued liability for the segment and the market value of the assets allocated to the segment. Then, using the formula specified in CAS 413-50(c)(12), Raytheon computed the Government's share of the adjustment amount.

29. Notwithstanding the unequivocal requirement of CAS 413-50(c)(12), the DCE in a letter dated September 30, 2004 informed Raytheon that the Government did not intend to participate in the PWF segment closing.

30. Accordingly, Raytheon on November 8, 2004, submitted a certified claim, demanding payment of $1,124,366. Raytheon computed, in accordance with CAS 413-50(c)(12)(vi), that the Government's share of the pension adjustment amount for the PWF segment was $1,039,841 and the Government's share of the PRB adjustment amount for the PWF segment was $84,525.

31. The DCE denied Raytheon's PWF Claim in its entirety in a final decision dated February 1, 2005.

32. On November 30, 2007, Raytheon submitted its Rebuttal Expert Report of Steven G. Vernon in response to the Defendant's Expert Report of Mr. Colin England in this action. In Raytheon's Rebuttal Expert Report, Mr. Vernon independently performed segment closing calculations for the PWF segment for the related pension and PRB plans as required by CAS 413-50(c)(12). Then, using the formula specified in CAS 413-50(c)(12), Raytheon recomputed the Government's share of the adjustment amount.

33. In accordance with Raytheon's revised calculations, the Government's share of the pension adjustment amount for the PWF segment, determined in accordance with CAS 413-50(c)(12)(vi), is $1,174,014. However, because the PWF segment's pension plan is supplemented by the PRB plan, CAS 412-50(a)(7) requires that the two plans be considered as a single plan. The Government's share of the PRB adjustment amount, determined in accordance

with CAS 413-50(c)(12)(vi), is $(605,368). Accordingly, the Government's share of the combined pension and PRB adjustment amount is $568,646.

## VI. THE AEROSPACE CLAIM

34. On June 8, 2001, Raytheon sold its Aerospace Division segment to Veritas Capital. Under the terms of the asset purchase agreement, Raytheon retained all of the pension plan assets and actuarial accrued liabilities for the closed Aerospace segment.

35. As required by CAS 413-50(c)(12), Raytheon and its independent pension actuary determined the difference between the actuarial accrued liability for the segment and the market value of the assets allocated to the segment. Then, using the formula specified in CAS 413-50(c)(12), Raytheon computed the Government's share of the adjustment amount.

36. Notwithstanding the unequivocal requirement of CAS 413-50(c)(12), the DCE in a letter dated September 30, 2004 informed Raytheon that the Government did not intend to participate in the Aerospace segment closing.

37. Accordingly, Raytheon on January 24, 2005, submitted a certified claim, demanding payment of $2,901,507. Raytheon computed, in accordance with CAS 413-50(c)(12)(vi), that the Government's share of the pension adjustment amount for the Aerospace segment was $2,901,507.

38. The DCE denied Raytheon's Aerospace Claim in its entirety in a final decision dated March 7, 2005.

39. On November 30, 2007, Raytheon submitted its Rebuttal Expert Report of Steven G. Vernon in response to the Defendant's Expert Report of Mr. Colin England in this action. In Raytheon's Rebuttal Expert Report, Mr. Vernon independently performed segment closing calculations for the Aerospace segment for the related pension plans as required by CAS 413-50(c)(12). Then, using the formula specified in CAS 413-50(c)(12), Raytheon recomputed the Government's share of the adjustment amount.

40. In accordance with Raytheon's revised calculations, the Government's share of the pension adjustment amount for the Aerospace segment, determined in accordance with CAS 413-50(c)(12)(vi), is $2,933,153.

## VII. THE AIS CLAIM

41. On March 8, 2002, Raytheon sold its Aircraft Integrated Systems segment to L-3 Communications, Inc. Under the terms of the asset purchase agreement, Raytheon retained all of the pension plan assets and actuarial accrued liabilities for the closed AIS segment. Raytheon also retained all of the retiree medical plan liabilities.

42. As required by CAS 413-50(c)(12), Raytheon and its independent pension actuary determined the difference between the actuarial accrued liability for the segment and the market value of the assets allocated to the segment. Then, using the formula specified in CAS 413-50(c)(12), Raytheon computed the Government's share of the adjustment amount.

43. Notwithstanding the unequivocal requirement of CAS 413-50(c)(12), the DCE in a letter dated September 30, 2004 informed Raytheon that the Government did not intend to participate in the AIS segment closing.

44. Accordingly, Raytheon on January 24, 2005, submitted a certified claim, demanding payment of $68,570,448. Raytheon computed, in accordance with CAS 413-50(c)(12)(vi), that the Government's share of the pension adjustment amount for the AIS segment was $57,605,537 and the Government's share of the PRB adjustment amount for the AIS segment was $10,964,911.

45. The DCE denied Raytheon's AIS Claim in its entirety in a final decision dated March 7, 2005.

46. On November 30, 2007, Raytheon submitted its Rebuttal Expert Report of Steven G. Vernon in response to the Defendant's Expert Report of Mr. Colin England in this action. In Raytheon's Rebuttal Expert Report, Mr. Vernon independently performed segment closing

calculations for the AIS segment for the related pension and PRB plans as required by CAS 413-50(c)(12). Then, using the formula specified in CAS 413-50(c)(12), Raytheon recomputed the Government's share of the adjustment amount.

47. In accordance with Raytheon's revised calculations, the Government's share of the pension adjustment amount for the AIS segment, determined in accordance with CAS 413-50(c)(12)(vi), is $55,474,271. However, because the AIS segment's pension plan is supplemented by the PRB plan, CAS 412-50(a)(7) requires that the two plans be considered as a single plan. The Government's share of the PRB adjustment amount, determined in accordance with CAS 413-50(c)(12)(vi), is $11,077,211. Accordingly, the Government's share of the combined pension and PRB adjustment amount is $66,551,482.

**COUNT I**
(Optical Claim)

48. Raytheon incorporates the allegations contained in paragraphs 1 through 43 of this Complaint as though set forth fully herein.

49. The sale of Optical Systems was a segment closing within the meaning of 48 C.F.R. § 9904.413-50(c)(12).

50. The Government's share of the segment closing adjustment amount, computed in accordance with 48 C.F.R. § 9904.413-50(c)(12)(vi), is $14,963,231.

51. As required by 48 C.F.R. § 9904.413-50(c)(12)(vi), the full amount of the Government's share of the segment closing adjustment amount is allocable, without limit, as a charge during the cost accounting period in which the sale occurred, and the price of the Contract must be adjusted accordingly.

52. Raytheon is entitled to judgment in the amount of $14,963,231, plus Contract Disputes Act interest from the date of submission of the Optical Claim, November 8, 2004, until payment is made.

**COUNT II**
(PWF Claim)

53. Raytheon incorporates the allegations contained in paragraphs 1 through 43 of this Complaint as though set forth fully herein.

54. The sale of Printed Wire Fabrication was a segment closing within the meaning of 48 C.F.R. § 9904.413-50(c)(12).

55. The Government's share of the segment closing adjustment amount, computed in accordance with 48 C.F.R. § 9904.413-50(c)(12)(vi), is $568,646.

56. As required by 48 C.F.R. § 9904.413-50(c)(12)(vi), the full amount of the Government's share of the segment closing adjustment amount is allocable, without limit, as a charge during the cost accounting period in which the sale occurred, and the price of the Contract must be adjusted accordingly.

57. Raytheon is entitled to judgment in the amount of $568,646, plus Contract Disputes Act interest from the date of submission of the PWF Claim, November 8, 2004, until payment is made.

**COUNT III**
(Aerospace Claim)

58. Raytheon incorporates the allegations contained in paragraphs 1 through 43 of this Complaint as though set forth fully herein.

59. The sale of Raytheon Aerospace Division was a segment closing within the meaning of 48 C.F.R. § 9904.413-50(c)(12).

60. The Government's share of the segment closing adjustment amount, computed in accordance with 48 C.F.R. § 9904.413-50(c)(12)(vi), is $2,933,153.

61. As required by 48 C.F.R. § 9904.413-50(c)(12)(vi), the full amount of the Government's share of the segment closing adjustment amount is allocable, without limit, as a

charge during the cost accounting period in which the sale occurred, and the price of the Contract must be adjusted accordingly.

62. Raytheon is entitled to judgment in the amount of $2,933,153, plus Contract Disputes Act interest from the date of submission of the Aerospace Claim, January 24, 2005, until payment is made.

**COUNT IV**
(AIS Claim)

63. Raytheon incorporates the allegations contained in paragraphs 1 through 43 of this Complaint as though set forth fully herein.

64. The sale of Aircraft Integrated Systems was a segment closing within the meaning of 48 C.F.R. § 9904.413-50(c)(12).

65. The Government's share of the segment closing adjustment amount, computed in accordance with 48 C.F.R. § 9904.413-50(c)(12)(vi), is $66,551,482.

66. As required by 48 C.F.R. § 9904.413-50(c)(12)(vi), the full amount of the Government's share of the segment closing adjustment amount is allocable, without limit, as a charge during the cost accounting period in which the sale occurred, and the price of the Contract must be adjusted accordingly.

67. Raytheon is entitled to judgment in the amount of $66,551,482, plus Contract Disputes Act interest from the date of submission of the AIS Claim, January 24, 2005, until payment is made.

WHEREFORE, for the reasons set forth above, Raytheon prays for relief as follows:

A. That the Court enter judgment against the United States in the amount of $85,016,513, plus Contract Disputes Act interest from the date of submission of each of the claims described above to the date of payment.

B. That the Court award costs, attorneys' fees, and such other and further relief as the Court may deem just and equitable in the circumstances.

Date: November 30, 2007

Respectfully submitted,

s/Karen L. Manos
Karen L. Manos, Esq.
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, NW
Washington, DC 20036
Telephone: (202) 955-8536
Facsimile: (202) 530-9533
kmanos@gibsondunn.com

Attorney of Record for Plaintiff
RAYTHEON COMPANY

Of Counsel:

Christyne K. Brennan, Esq.
GIBSON, DUNN & CRUTCHER LLP