**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **RAYTHEON COMPANY,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **No. 05-448C** |
| | ) | **(Judge Firestone)** |
| **UNITED STATES OF AMERICA,** | ) | |
| **Defendant.** | ) | |

**DEFENDANT'S STATUS REPORT**

As directed by the Court's order dated March 26, 2008, defendant the United States respectfully submits this Status Report setting forth the Government's views on the next steps in this litigation. Defendant is submitting this status report on its own behalf because the parties have discussed but were not able to agree upon next steps in this litigation that they could jointly recommend for the Court's consideration.[1]

The fairest and most expeditious way to resolve this litigation is *not* for the Court to schedule the hasty and premature September trial that plaintiff Raytheon Company ("Raytheon") requests, but, instead, for the Court to resolve, by cross-motions for summary judgment, as many of the issues in the case as possible, and then schedule a trial on any remaining issues only after the resolution of the parties' summary judgment motions. This Court should decide the governing legal principles and leave to the parties the accounting task of calculating the appropriate recovery amounts in light of these principles. If, and only if, the parties prove

[1] Defendant is submitting its status report today, rather than on June 13, 2008, as directed in the Court's March 26 order, because undersigned counsel for defendant's office was closed and inaccessible on June 13, 2008, due to the power outage that affected much of downtown Washington, D.C. that day. We understand that, because the Howard T. Markey National Courts Building was also closed on June 13 due to the power outage, under RCFC 6(a), defendant's status report is due today (June 16).

unable to agree upon how to apply the Court's principles to particular segment-closing calculations, the Court could then address and resolve any such accounting issues at that time.

Further, Raytheon, as the party bearing the burden of proof, should file the first summary judgment motion, and should not be heard to complain about the alleged unfairness of having to proceed in accordance with the sequential cross-motion procedure that RCFC 56 and 7.2(e) provide. The Court should utilize these procedures, and not require the parties to file simultaneous summary judgment motions. There are at least two problems with the simultaneous motions that Raytheon requests. There is, first, a substantial risk that the parties will not effectively engage each other's arguments, and, in any event, the four briefs provided for in the sequential cross-motion procedure will be multiplied to a total of six briefs, with no resulting benefit to the Court. Given that the parties have already exchanged a total of six expert witness reports (initial expert reports, rebuttal reports, and reply rebuttal reports), and that each party's expert has been deposed for a full day, Raytheon cannot seriously suggest that it does not know enough about what defendant contends regarding the deficiencies and problems in Raytheon's various segment closing calculations to file an initial summary judgment motion.

Although, on its face, this case involves claims for four segment closings, in fact, there are a total of 16 separate segment closing claims (because a number of Raytheon's segments are covered by more than one pension plan), and because, for three of the segments, Raytheon has asserted a claim for future post-retirement medical benefits ("PRBs") as part of its claim for a CAS 413 adjustment of pension cost. In order to resolve this case in its entirety, the Court will need to determine a number of legal issues, including:

1. Whether Raytheon is entitled to recover any closed segment's PRB deficit as part of the segment closing adjustment of previously-determined pension costs under

CAS 413.50(c)(12);

2. Whether Raytheon's claims are barred in whole or in part by the Novation Agreements that it entered into with the Government;

3. Whether Raytheon's claims are barred by its failure to fund the amounts it claims by timely contributions to its pension plans, as required by FAR § 31.205-6(j), 48 C.F.R. § 31.205-6(j) (1995); CAS 412, 48 C.F.R. § 9904.412 (1995); and the Allowable Cost and Payment clause at FAR § 52.216-7, 48 C.F.R. § 52.216-7 (1995); and

   a. whether Raytheon's recovery is limited to the maximum amounts recoverable under the Limitation of Cost clause at FAR § 52.232-20, 48 C.F.R. § 52.232-20 (1995), and the Limitation of Funds clause at FAR § 52.232-22, 48 C.F.R. § 52.232-22 (1995).[2]

These issues should be decided before the Court schedules a trial in this case. It would make no sense, for example, to schedule a trial on Raytheon's seven PRB claims (claims for the deficits of seven different PRB plans that covered three segments) until this Court has resolved the fundamental preliminary question of entitlement – whether Raytheon can recover its PRB deficits at all in a CAS 413 segment closing adjustment.

There are also a number of other legal issues relating to Raytheon's calculation of the amounts of the segment closing adjustments it seeks that should be resolved as a matter of law. These include:

4. Whether, in determining the amount of assets allocable to a closed segment, Raytheon may properly allocate assets to the segment using a method that does not comply with either of the two methods of asset allocation that CAS

---

[2] We recognize that it appears that in other cases the Court has resolved against the Government the issues set forth in this paragraph (¶ 3). *See General Motors Corp. v. United States*, 66 Fed. Cl. 153 (2005); *Viacom Inc. v. United States*, 70 Fed. Cl. 649 (2006). As the Court is aware, we respectfully disagree with the Court's conclusions on these issues in these other cases, and want to preserve these issues for possible review by the court of appeals after final judgment in this case. As a result, the Court will need to address these issues in this case in order to resolve the case in its entirety.

413.50(c)(5) permits;

5. Whether Raytheon properly accounted for the effects of employee contributions in its segment-closing calculations, when it used a method contrary to the Joint Guidance issued by the Defense Contract Audit Agency and the Defense Contract Management Agency (entitled "DCAA/DCMA Joint Guidance Implementing the Teledyne Decision on CAS 413.50(c)(12) Segment Closing Adjustments"), dated July 23, 2004;

6. Whether, in calculating the pension surpluses or deficits of the closed segments under CAS 413.50(c)(12), Raytheon is required to include the assets and liabilities attributable to inactive plan participants; and

7. Whether, when Raytheon has purchased a segment with a pension surplus and later closes it, the calculation of the Government's share of the segment's surplus at segment closing necessarily includes consideration of the pension contributions made by the segment's previous owner that the Government reimbursed and that, at least in part, gave rise to the surplus at the time Raytheon bought the segment.

When the Court has resolved these and other calculation issues as a matter of law, the parties should have little difficulty in calculating the appropriate amount of Raytheon's recovery in each segment closing.

Thus, Raytheon would have the Court conduct a trial before determining whether most, or perhaps even all, of the issues in the case can be resolved by summary judgment. This is the antithesis of an orderly and expeditious procedure.

Accordingly, the Government proposes the following schedule for the Court's consideration:

| | |
|---|---|
| July 25, 2008 | Raytheon to file summary judgment motion on entitlement and quantum issues |
| September 16, 2008 | Defendant to file its cross-motion for summary judgment |
| October 31, 2008 | Raytheon to file its opposition to defendant's cross-motion and reply in support of its motion for summary judgment |
| November 21, 2008 | Defendant to file its reply in support of its cross-motion |

After the Court has decided the parties' cross-motions for partial summary judgment, the Court can then schedule a trial upon any issues that remain. The Court should reject Raytheon's suggestion that the Court abandon the summary judgment procedure before the procedure has even been tried, a suggestion that would lead the Court to an early and improvident trial.

For the foregoing reasons, we respectfully request that the Court issue a scheduling order providing for summary judgment briefing according to the schedule set forth above.

Respectfully submitted,

GREGORY G. KATSAS
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Kirk T. Manhardt
by s/ Franklin E. White
KIRK T. MANHARDT
Assistant Director

OF COUNSEL:

LAWRENCE S. RABYNE
Defense Contract Management Agency
1523 W. Central Road
Arlington Heights, IL 60005-2451

Dated: June 16, 2008

s/ C. Coleman Bird
C. COLEMAN BIRD
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Telephone: 202.307.0453
Facsimile: 202.514.7965
E-Mail: Coleman.Bird@usdoj.gov
Attorneys for Defendant United States

**CERTIFICATE OF FILING**

I hereby certify that on the 16th day of June, 2008, a copy of the foregoing Defendant's Status Report was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ C. Coleman Bird